UNION BANK *v.* WOLAS, CHAPTER 7 TRUSTEE FOR THE
ESTATE OF ZZZZ BEST CO., INC.

No. 90–1491.   Argued November 5, 1991—Decided December 11, 1991

STEVENS, J., delivered the opinion for a unanimous Court. SCALIA, J., filed a concurring opinion, *post*, p. 163.

*John A. Graham* argued the cause for petitioner. With him on the briefs were *Lesley Anne Hawes, Donald Robert Meyer*, and *Stephen Howard Weiss*.

*Herbert Wolas, pro se*, argued the cause for respondent. With him on the brief was *Terry A. Ickowicz*.*

JUSTICE STEVENS delivered the opinion of the Court.

Section 547(b) of the Bankruptcy Code, 11 U. S. C. § 547(b), authorizes a trustee to avoid certain property transfers made by a debtor within 90 days before bankruptcy. The Code makes an exception, however, for transfers made in the ordinary course of business, § 547(c)(2). The question presented is whether payments on long-term debt may qualify for that exception.

On December 17, 1986, ZZZZ Best Co., Inc. (Debtor), borrowed $7 million from petitioner, Union Bank (Bank).[1] On

---

*Briefs of *amici curiae* urging reversal were filed for the American Bankers Association by *John J. Gill III* and *Michael F. Crotty;* for the American Council of Life Insurance et al. by *Phillip E. Stano, Robert M. Zinman, Richard E. Barnsback, Bruce Hyman*, and *Christopher F. Graham;* for the California Bankers Association by *Robert L. Morrison* and *Kenneth N. Russak;* for the New York Clearing House Association by *Richard H. Klapper, John L. Warden, Robinson B. Lacy*, and *Michael M. Wiseman;* and for Robert Morris Associates by *Raymond K. Denworth, Jr.*

[1] The Bankruptcy Court found that the Bank and Debtor executed a revolving credit agreement on December 16, 1986, in which the Bank agreed to lend the Debtor $7 million in accordance with the terms of

July 8, 1987, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. During the preceding 90-day period, the Debtor had made two interest payments totaling approximately $100,000 and had paid a loan commitment fee of about $2,500 to the Bank. After his appointment as trustee of the Debtor's estate, respondent filed a complaint against the Bank to recover those payments pursuant to § 547(b).

The Bankruptcy Court found that the loans had been made "in the ordinary course of business or financial affairs" of both the Debtor and the Bank, and that both interest payments as well as the payment of the loan commitment fee had been made according to ordinary business terms and in the ordinary course of business.[2] As a matter of law, the Bankruptcy Court concluded that the payments satisfied the requirements of § 547(c)(2) and therefore were not avoidable by the trustee.[3] The District Court affirmed the Bankruptcy Court's summary judgment in favor of the Bank.[4]

Shortly thereafter, in another case, the Court of Appeals held that the ordinary course of business exception to avoidance of preferential transfers was not available to long-term creditors. *In re CHG Int'l, Inc.*, 897 F. 2d 1479 (CA9 1990). In reaching that conclusion, the Court of Appeals relied primarily on the policies underlying the voidable preference provisions and the state of the law prior to the enactment of the 1978 Bankruptcy Code and its amendment in 1984.

---

a promissory note to be executed and delivered by the Debtor. No. 87–13692 (Bkrtcy. Ct. CD Cal., Aug. 22, 1988), App. to Pet. for Cert. 12a. On December 17, 1986, the Debtor executed and delivered to the Bank a promissory note in the principal sum of $7 million. The promissory note provided that interest would be payable on a monthly basis and would accrue on the principal balance at a rate of 0.65% per annum in excess of the Bank's reference rate. *Ibid.*

[2] App. to Pet. for Cert. 14a.

[3] *Ibid.*

[4] *In re ZZZZ Best Co., Inc.*, No. 88–6285, 1989 U. S. Dist. LEXIS 17500, *1 (CD Cal., Aug. 4, 1989).

Thus, the Ninth Circuit concluded, its holding in *CHG Int'l, Inc.* dictated a reversal in this case. 921 F. 2d 968, 969 (1990).[5] The importance of the question of law decided by the Ninth Circuit, coupled with the fact that the Sixth Circuit had interpreted § 547(c)(2) in a contrary manner, *In re Finn*, 909 F. 2d 903 (1990), persuaded us to grant the Bank's petition for certiorari. 500 U. S. 915 (1991).

I

We shall discuss the history and policy of § 547 after examining its text. In subsection (b), Congress broadly authorized bankruptcy trustees to "avoid any transfer of an interest of the debtor in property" *if* five conditions are satisfied and *unless* one of seven exceptions defined in subsection (c) is applicable.[6] In brief, the five characteristics of a voidable

---

[5] In so holding, the Ninth Circuit rejected the Bank's argument that the revolving line of credit in this case was not "long-term" because it was for less than one year. 921 F. 2d, at 969. Because we hold that the ordinary course of business exception applies to payments on long-term as well as short-term debt, we need not decide whether the revolving line of credit was a "long-term" debt.

[6] Title 11 U. S. C. § 547(b) provides:

"Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

"(1) to or for the benefit of a creditor;

"(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

"(3) made while the debtor was insolvent;

"(4) made—

"(A) on or within 90 days before the date of the filing of the petition; or

"(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

"(5) that enables such creditor to receive more than such creditor would receive if—

"(A) the case were a case under chapter 7 of this title;

"(B) the transfer had not been made; and

"(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

preference are that it (1) benefit a creditor; (2) be on account of antecedent debt; (3) be made while the debtor was insolvent; (4) be made within 90 days before bankruptcy; and (5) enable the creditor to receive a larger share of the estate than if the transfer had not been made. Section 547 also provides that the debtor is presumed to have been insolvent during the 90-day period preceding bankruptcy. § 547(f). In this case, it is undisputed that all five of the foregoing conditions were satisfied and that the interest and loan commitment fee payments were voidable preferences unless excepted by subsection (c)(2).

The most significant feature of subsection (c)(2) that is relevant to this case is the absence of any language distinguishing between long-term debt and short-term debt.[7] That subsection provides:

> "The trustee may not avoid under this section a transfer—
>
> .  .  .  .  .
>
> "(2) to the extent that such transfer was—
> "(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
> "(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
> "(C) made according to ordinary business terms."

Instead of focusing on the term of the debt for which the transfer was made, subsection (c)(2) focuses on whether the debt was incurred, and payment made, in the "ordinary course of business or financial affairs" of the debtor and transferee. Thus, the text provides no support for respondent's contention that § 547(c)(2)'s coverage is limited to short-term debt, such as commercial paper or trade debt. Given

---

[7] Nor does the definitional section of the Bankruptcy Code, which defines the term "debt" broadly as a "liability on a claim," 11 U. S. C. § 101(11), distinguish between short-term debt and long-term debt.

the clarity of the statutory text, respondent's burden of persuading us that Congress intended to create or to preserve a special rule for long-term debt is exceptionally heavy. *United States* v. *Ron Pair Enterprises, Inc.*, 489 U. S. 235, 241–242 (1989). As did the Ninth Circuit, respondent relies on the history and the policies underlying the preference provision.

## II

The relevant history of § 547 contains two chapters, one of which clearly supports, and the second of which is not inconsistent with, the Bank's literal reading of the statute. Section 547 was enacted in 1978 when Congress overhauled the Nation's bankruptcy laws. The section was amended in 1984. For purposes of the question presented in this case, the original version of § 547 differed in one significant respect from the current version: It contained a provision that the ordinary course of business exception did not apply unless the payment was made within 45 days of the date the debt was incurred.[8] That provision presumably excluded most payments on long-term debt from the exception.[9] In 1984 Congress repealed the 45-day limitation but

---

[8] As enacted in 1978, § 547(c) provided, in relevant part:

"The trustee may not avoid under this section a transfer—

. . . . .

"(2) to the extent that such transfer was—

"(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

"(B) *made not later than 45 days after such debt was incurred;*

"(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

"(D) made according to ordinary business terms." 92 Stat. 2598 (emphasis added).

[9] We use the term "presumably" because it is not necessary in this case to decide whether monthly interest payments on long-term debt were protected by the initial version of § 547(c)(2). Cf. *In re Iowa Premium Serv. Co., Inc.*, 695 F. 2d 1109 (CA8 1982) (en banc) (holding that interest obligations are "incurred" when they become due, rather than when the promissory note is signed). We refer to "most" instead of "all" long-term debt

did not substitute a comparable limitation.   See Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. 98–353, § 462(c), 98 Stat. 378.

Respondent contends that this amendment was intended to satisfy complaints by issuers of commercial paper[10] and by trade creditors[11] that regularly extended credit for periods of more than 45 days.   Furthermore, respondent continues, there is no evidence in the legislative history that Congress intended to make the ordinary course of business exception available to conventional long-term lenders. Therefore, respondent argues, we should follow the analysis of the Ninth Circuit and read § 547(c)(2) as protecting only short-term debt payments.   Cf. *In re CHG Int'l*, 897 F. 2d, at 1484.

We need not dispute the accuracy of respondent's description of the legislative history of the 1984 amendment in order to reject his conclusion.   For even if Congress adopted the

---

payments because of the possibility that a debtor's otherwise avoidable payment was made within 45 days of the date the long-term loan was made.

[10] Because payments to a commercial paper purchaser within 90 days prior to bankruptcy may be preferential transfers under § 547(b), a purchaser could be assured that the payment would not be avoided under the prior version of § 547(c)(2) only if the commercial paper had a maturity of 45 days or less.   Commercial issuers thus complained that the 45-day limitation lowered demand for commercial paper with a maturity in excess of 45 days.   See Hearings on S. 3023 before the Subcommittee on Judicial Machinery of the Senate Committee on the Judiciary, 96th Cong., 2d Sess., 8–27 (1980) (statements of George Van Cleave, partner, Goldman, Sachs & Co., and James Ledinsky, Senior Vice President, A. G. Becker & Co.).

[11] Trade creditors stated that normal payment periods in many industries exceeded 45 days and complained that the arbitrary 45-day limitation in § 547(c)(2) deprived these trade creditors of the protection of the ordinary course of business exception to the trustee's power to avoid preferential transfers.   See, *e. g.*, Hearings on Bankruptcy Reform Act of 1978 before the Subcommittee on Courts of the Senate Committee on the Judiciary, 97th Cong., 1st Sess., 259–260 (1981) (statement of Vyto Gestautas on behalf of the National Association of Credit Management).

1984 amendment to redress particular problems of specific short-term creditors, it remains true that Congress redressed those problems by entirely deleting the time limitation in §547(c)(2). The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning. *Toibb* v. *Radloff*, 501 U. S. 157, 164 (1991).

Respondent also relies on the history of voidable preferences prior to the enactment of the 1978 Bankruptcy Code. The text of the preference provision in the earlier Bankruptcy Act did not specifically include an exception for payments made in the ordinary course of business.[12] The courts had, however, developed what is sometimes described as the "current expense" rule to cover situations in which a debtor's payments on the eve of bankruptcy did not diminish the net estate because tangible assets were obtained in exchange for the payment. See *Marshall* v. *Florida Nat. Bank of Jacksonville*, 112 F. 2d 380, 382 (CA5 1940); 3 Collier on Bankruptcy ¶ 60.23, p. 873 (14th ed. 1977). Without such an exception, trade creditors and other suppliers of necessary goods and services might have been reluctant to extend even short-term credit and might have required advance payment

---

[12] Section 60 of the 1898 Bankruptcy Act, as amended and codified in 11 U. S. C. § 96 (1976 ed.), provided in relevant part:

"(a)(1) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

.    .    .    .    .

"(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property . . . ."

instead, thus making it difficult for many companies in temporary distress to have remained in business. Respondent argues that Congress enacted § 547(c)(2) in 1978 to codify that exception, and therefore the Court should construe § 547(c)(2) as limited to the confines of the current expense rule.

This argument is not compelling for several reasons. First, it is by no means clear that § 547(c)(2) should be construed as the statutory analogue of the judicially crafted current expense rule because there are other exceptions in § 547(c) that explicitly cover contemporaneous exchanges for new value.[13] Those provisions occupy some (if not all) of the territory previously covered by the current expense rule. Nor has respondent directed our attention to any extrinsic evidence suggesting that Congress intended to codify the current expense rule in § 547(c)(2).[14]

The current expense rule developed when the statutory preference provision was significantly narrower than it is today. To establish a preference under the Bankruptcy Act, the trustee had to prove that the challenged payment was made at a time when the creditor had "reasonable cause to believe that the debtor [was] insolvent." 11 U. S. C. § 96(b) (1976 ed.). When Congress rewrote the preference provision in the 1978 Bankruptcy Code, it substantially enlarged the trustee's power to avoid preferential transfers by eliminating the reasonable cause to believe requirement for transfers made within 90 days of bankruptcy and creating a presumption of insolvency during that period. See 11 U. S. C.

---

[13] Thus, for example, § 547(c)(1) exempts a transfer to the extent that it was a "contemporaneous exchange for new value given to the debtor," and § 547(c)(4) exempts a transfer to a creditor "to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor . . . ."

[14] In fact, the legislative history apparently does not even mention the current expense rule. See Broome, Payments on Long-Term Debt as Voidable Preferences: The Impact of the 1984 Bankruptcy Amendments, 1987 Duke L. J. 78, 97.

§§ 547(b), (c)(2), (f); H. R. Rep. No. 95–595, p. 178 (1977). At the same time, Congress created a new exception for transfers made in the ordinary course of business, 11 U. S. C. § 547(c)(2). This exception was intended to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." H. R. Rep. No. 95–595, at 373.

In light of these substantial changes in the preference provision, there is no reason to assume that the justification for narrowly confining the "current expense" exception to trade creditors before 1978 should apply to the ordinary course of business exception under the 1978 Code. Instead, the fact that Congress carefully reexamined and entirely rewrote the preference provision in 1978 supports the conclusion that the text of § 547(c)(2) as enacted reflects the deliberate choice of Congress.[15]

### III

The Bank and the trustee agree that § 547 is intended to serve two basic policies that are fairly described in the House Committee Report. The Committee explained:

> "A preference is a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in

---

[15] Indeed, the House Committee Report concludes its discussion of the trustee's avoidance powers with the observation that the language in the preference section of the earlier Bankruptcy Act was "hopelessly complex" and had been "subject to varying interpretations. The bill undoes the numerous amendments that have been heaped on section 60 during the past 40 years, and proposes a unified and coherent section to deal with the problems created by prebankruptcy preferential transfers." H. R. Rep. No. 95–595, p. 179 (1977). Respondent's assumption that § 547(c)(2) was intended to preserve pre-existing law is at war with this legislative history.

the distribution of the assets of the bankrupt estate. The purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution." *Id.*, at 177–178.

As this comment demonstrates, the two policies are not entirely independent. On the one hand, any exception for a payment on account of an antecedent debt tends to favor the payee over other creditors and therefore may conflict with the policy of equal treatment. On the other hand, the ordinary course of business exception may benefit all creditors by deterring the "race to the courthouse" and enabling the struggling debtor to continue operating its business.

Respondent places primary emphasis, as did the Court of Appeals, on the interest in equal distribution. See *In re CHG Int'l*, 897 F. 2d, at 1483–1485. When a debtor is insolvent, a transfer to one creditor necessarily impairs the claims of the debtor's other unsecured and undersecured creditors. By authorizing the avoidance of such preferential transfers, § 547(b) empowers the trustee to restore equal status to all creditors. Respondent thus contends that the ordinary course of business exception should be limited to short-term

debt so the trustee may order that preferential long-term debt payments be returned to the estate to be distributed among all of the creditors.

But the statutory text—which makes no distinction between short-term debt and long-term debt—precludes an analysis that divorces the policy of favoring equal distribution from the policy of discouraging creditors from racing to the courthouse to dismember the debtor. Long-term creditors, as well as trade creditors, may seek a head start in that race. Thus, even if we accept the Court of Appeals' conclusion that the availability of the ordinary business exception to long-term creditors does not directly further the policy of equal treatment, we must recognize that it does further the policy of deterring the race to the courthouse and, as the House Report recognized, may indirectly further the goal of equal distribution as well. Whether Congress has wisely balanced the sometimes conflicting policies underlying § 547 is not a question that we are authorized to decide.

## IV

In sum, we hold that payments on long-term debt, as well as payments on short-term debt, may qualify for the ordinary course of business exception to the trustee's power to avoid preferential transfers. We express no opinion, however, on the question whether the Bankruptcy Court correctly concluded that the Debtor's payments of interest and the loan commitment fee qualify for the ordinary course of business exception, § 547(c)(2). In particular, we do not decide whether the loan involved in this case was incurred in the ordinary course of the Debtor's business and of the Bank's business, whether the payments were made in the ordinary course of business, or whether the payments were made according to ordinary business terms. These questions remain open for the Court of Appeals on remand.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, concurring.

I join the opinion of the Court, including Parts II and III, which respond persuasively to legislative-history and policy arguments made by respondent. It is regrettable that we have a legal culture in which such arguments have to be addressed (and are indeed credited by a Court of Appeals), with respect to a statute utterly devoid of language that could remotely be thought to distinguish between long-term and short-term debt. Since there was here no contention of a "scrivener's error" producing an absurd result, the plain text of the statute should have made this litigation unnecessary and unmaintainable.