In re KELLER TOOL CORPORATION,
Debtor,

Charles W. RISKE, Trustee in
Bankruptcy, Plaintiff,

v.

C.T.S. SYSTEMS, INC., Defendant.

Bankruptcy No. 91–47321–172.
Adv. No. 92–4407–172.

United States Bankruptcy Court,
E.D. Missouri, E.D.

March 9, 1993.

Stuart J. Radloff, Clayton, MO, for plaintiff/trustee.

Richard J. Dipple, St. Louis, MO, for defendant.

## MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

At Saint Louis, in this District, this 9th day of March, 1993.

The Trustee's Adversary Complaint to recover an allegedly preferential transfer pursuant to 11 U.S.C. § 547 was tried to the Court on March 8, 1993. At the conclusion of the trial, the Court announced its determinations and orders from the bench.

This is a core proceeding pursuant to Section 157(b)(2)(F) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Rule 29 of the Local Rules of the United States District Court for the Eastern District of Missouri.

This Chapter 7 Bankruptcy case was commenced by the filing of an involuntary petition against the Debtor/Corporation on November 10, 1991. An order for relief under Chapter 7 was entered by the Court on March 12, 1992. Charles W. Riske, Plaintiff here, was appointed Trustee in Bankruptcy on March 18, 1992.

This Defendant was a pre-petition creditor of this Debtor by virtue of a sales agreement dated July 16, 1991. The Debtor agreed to purchase from the Defendant certain computer hardware and software, as well as installation and consulting services. The Debtor paid an initial deposit to the Defendant in the amount of $1,500.00 on July 16, 1991. *Plaintiff's Exhibit No. 1.*

On about August 7, 1991, the Defendant delivered an invoice to the Debtor reflecting a balance due in the amount of $5,070.08. The invoice contained a statement that required payment of the balance due within thirty (30) days of the date of the invoice. The testimony at this trial indicated that the hardware and software would have been delivered at about the same time as the date of this invoice. *Plaintiff's Exhibit No. 2.*

In fact, the balance due was not paid to the Defendant within the thirty (30) days after the date of the invoice. Rather, the Debtor issued two checks to the Defendant in full satisfaction of the balance due as follows: On October 7, 1991, a check in the amount of $2,500.00; on October 9, 1991, a check in the amount of $2,570.08. *Plaintiff's Exhibit No. 3.* These two payments were made to the Defendant within the ninety (90) days preceding the filing of the petition in this case.

The Chapter 7 Trustee has testified that there will be considerably less than a 100 percent distribution to the holders of allowed unsecured claims in this case.

Therefore, the Plaintiff has satisfied the five characteristics of a voidable preference: (1) the transfers were beneficial to this Defendant; (2) the transfers were on account of an antecedent debt; (3) the transfers were made while the Debtor was insolvent; (4) the transfers were made within the ninety (90) days before bankruptcy; and (5) the transfers enabled this Defendant to receive a larger share of the estate than if the transfers had not been made. *Union Bank v. Wolas*, — U.S. —, 112 S.Ct. 527, 529, 116 L.Ed.2d 514 (1991).

In defense of the receipt of these transfers, the Defendant has argued that the payments were within the ordinary course of business or financial affairs of the Debtor and the transferee, and are, therefore, an exception to the Trustee's avoiding powers. Section 547(c)(2) provides as follows:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee;

(C) made according to ordinary business terms[.]

■ This Section is intended to protect recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the Debtor and the Debtor's transferee. 2 Collier on Bankruptcy, ¶ 547.10, P. 547–48 (15th Ed.1992).

■ A key, although not exclusive, element in the consideration of this defense of the preferential transfer is the relationship and nature of the dealings between the Debtor and the Defendant. When, as here, the record has established that the Debtor and the Defendant had no business dealings prior to the transaction that is the subject of this proceeding, the Court may look to the parties' ordinary course of dealings in other business transactions. *See In re Morren Meat and Poultry Co., Inc.*, 92 B.R. 737, 740 (Bankr.W.D.Mich.1988).

Initially, however, the Court must examine the course of business dealings between the Debtor and the Defendant as it may be established by the documents and other evidence that appear from the record. The Defendant's invoice clearly and unequivocally requires payment of the balance due "net thirty days". *Plaintiff's Exhibit No. 2.*

■ The Court has determined that the two payments that are the subject of this proceeding were not made during the ordinary course of business of these parties, as that "ordinary course" has been established from the documents admitted in this proceeding.

The Defendant has argued that the payments were not made within thirty (30) days after the date of the invoice because the customer (Debtor) was not satisfied with the equipment until certain adjustments were made on about September 6, 1991. Although the Defendant's testimony is credible, there is no written corroboration of any agreement to waive or alter the specific course of business dealings as set out by the documentation in this matter. In fact, the two payments in question here were made approximately sixty and sixty-two days after the date of the invoice, and thirty-one and thirty-three days before the petition was filed in this case.

■ One of the purposes of Section 547 is to put all creditors on a relatively level plain with respect to the use of debtor's assets that may have been available during the debtor's slide into bankruptcy. The ordinary course of business exception at Section 547(c)(2) was intended to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." *Union Bank v. Wolas*, — U.S. at —, 112 S.Ct. at 532; *H.R.Rep. No. 95–595*, at 373, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6329.

Although the results of Section 547 may appear harsh, Congress and the Courts have indicated that this result is necessary to accomplish the overall scheme of the Bankruptcy Code, including the attempt to provide a predictable, fair distribution of a debtor's assets to the holders of allowed claims.

Therefore, the Plaintiff has established that the two payments in question were preferential transfers pursuant to Section 547. The Court has determined that the Defendant has not established (i) that the payments were in the ordinary course of business affairs of the Debtor and the transferee; (ii) that the payments were made in the ordinary course of business of the Debtor and the transferee; and (iii) that the payments were made according to ordinary business terms. By separate order, judgment is entered in favor of the Plaintiff and against the Defendant.