PER CURIAM.
This matter is before the Court on a Petition for a Writ of Mandamus filed March 26, 2013, requesting the Court to vacate the decision of the Board of Elections (BOE) of the Eastern Band of Cherokee Indians (EBCI) dated March 19, 2013. The BOE denied Petitioner certification and otherwise refused to permit him to file as a candidate under Cherokee Code (CC) § 161-4. Additionally, Petitioner argues that the BOE decision prevented him from voting in the primary election for the office of Principal Chief of the Eastern Band of Cherokee Indians as established by CC § 161-l(b) for the first Thursday in June 2013.
The Cherokee Supreme Court has original jurisdiction of this case pursuant to Section 7-2(e) of the Cherokee Code. Crowe v. Eastern Band of Cherokee Indians, 3 Cher.Rep. 78 (2003). In accordance with Cherokee Rules of Appellate Procedure (RAP) 11(b)(3), the Court decided to review and render a decision on the record without oral arguments.
The following facts are uncontro-verted:
• The most recent General Election for the Office of Chief and Vice Chief was held in September 2011 for the term of office running from 2011 to 2015.
• The Cherokee Charter (Charter) § 3 states “[t]he election for Principal Chief and Vice Chief and Tribal Council shall be held on the first Thursday in September, 1987, and every two (2) years thereafter, under such rules and regulations as may be adopted by the council.”
• The Charter § 5 states “[t]he representative elected to the Tribal Council shall hold office for terms of two years. The Principal Chief and Vice Chief shall hold office for terms of four years.”
• CC § 161—1(b) was amended as part of the Election Ordinance, Ordinance No. 85, passed in September 2012. CC § 161-l(b) states that “[t]he Primary Election for the office of Principal Chief and Vice-Chief shall be held on the first Thursday in June, 2013, and each four years thereafter.”
• The BOE ran a full page ad noticing the electorate of its “2013 Election Notice of Changes & Dates” stating the filing deadline for Candidacy of March 1-15, 2013 for all Tribal Council Positions open as well as Big Cove, Birdtown, and Wolfetown School Board Representatives. Filing fees: Tribal Council $500, School Board $350” in the following Cherokee One Feather issues: November 29,2012; February 14, 2013; February 21, 2013; February 28, 2013; and March 7, 2013.
• On March 1, 2013, Petitioner attempted to file for the election of Principal Chief, but was refused by the EBCI Finance Office and the BOE.
The Court takes notice that the Petitioner provided an incomplete petition as required under the Cherokee Rules of Appellate Procedure 11(b)(2). The Petitioner noted in FN1 of the Writ that he “has no understanding that the BOE has any authority to certify copies.... ” Petitioner has provided no evidence or attempt on his part to have the documents certified. In addition, the Transcript of the BOE Hear *174 ing held on March 15, 2013, was unsigned and not certified as a true and correct transcript by the hearing transcriptionist. These omissions violate Rule 11(b)(2) of the Cherokee Rules of Appellate Procedure, which states:
The petition shall contain a statement of the facts necessary to an understanding of the issues presented by the application; a statement of the issues presented and of the relief sought; a statement of the reasons why the writ should issue; and certified copies of any order or opinion or parts of the record which may be essential to an understanding of the matters set forth in the petition.
These omissions of failing to certify the documents and failing to have the transcript signed and certified by the hearing transcriptionist on behalf of Petitioner are grounds for dismissal pursuant RAP 21(b)(1). However, due to the public interest, the Court declines in this instance to dismiss the case and has decided to review the case on the merits.
In reviewing a final decision of the BOE, the standard of review is de novo, reviewing only alleged errors of law. CC § 161-23, Crowe, at *1. Therefore, the Court must determine whether the findings of fact and conclusions of law support the BOE’s final determination as set out in its decision dated March 19, 2013. In that decision, the BOE denied Petitioner’s application for the Office of Principal Chief because “the Board has not accepted and will not accept any applications for the positions of Principal Chief or Vice Chief in 2013 and will not conduct primary or general elections for those positions in 2013, because under the Charter it lacks authority to do any of these things until 2015.” BOE Decision, at 8.
*175 § 161-22(c) Effective Date; amendment, severability; weekends. If any provisions of this Chapter are found to be invalid because it is inconsistent with another law, then the inconsistent portion shall be reviewed and amended until all conflicts are resolved. All other provisions of this Chapter shall remain in full force and effect.
*174 The first issue we must address is whether the BOE acted outside the scope of its authority in making its final determination. The Court finds that a review of the Election Code expressly shows that the Tribal Council granted the BOE the powers and duties exercised in this dispute[1]. In particular, the Council granted “quasi-judicial powers to make the final rulings on all election protests”, CC § 161- *175 19(a); and the authority to hold hearings to “investigate irregularities ... and violation(s) of Tribal election rules and regulations by election officials or other persons.” CC § 161-19(g). Furthermore, the BOE was granted “the authority to fully implement and carry out all other duties set forth in this Chapter”. CC § 161—19(Z). Additionally, the Election Ordinance provides that “[i]f any provisions of this Chapter are found to be invalid because it is inconsistent with another law, then the inconsistent portion shall be reviewed and amended until all conflicts are resolved.” CC § 161-22(c). Consequently, based on the review of ease law, the Election Ordinance, and the Charter, the Court finds that the BOE had the authority to interpret the Code and apply that interpretation to the facts found in rendering a decision on Petitioner’s election protest.
We now turn to the final decision of the BOE that is the subject of this Petition for Writ of Mandamus. The BOE held:
The Board cannot give effect to the clerical error “2013” instead of “2015” because it is in conflict with the Tribal Charter.... The 2012 Amendment’s provision referencing a primary election for Vice Chief “in June, 2013, and each four years thereafter,” instead of 2015, is in direct conflict with section 5 of the Tribal Charter, which states that “[t]he Principal Chief and Vice Chief shall hold office for terms of four years.” To attempt to hold a primary election for those offices only two years into the current terms would be beyond the Board of Elections’ authority.
The BOE interviewed Tribal members, reviewed their own notes on the issue, videotapes of Council meetings, and the public notice regarding the changes to the dates of the Primary election for the offices of Tribal Council and eligible School Board members. The BOE found that ten of the eleven Council members contacted and all six current or former BOE Board members involved stated that the date “2013” in Section 161-l(b) was an inadvertent clerical error and should be “2015” and that that the only purpose of the amendment was to change the primary election from the first Thursday in July to the first Thursday in June. BOE Decision, at 5. Petitioner presented no evidence to the contrary. Based on their investigation, the BOE determined that there was a clerical error that had to be corrected to avoid the nonsensical result of having the Chiefs primary election more than 2 years prior to the beginning of the term of office.
Next we must determine whether these findings of fact support the BOE’s conclusion of law to go beyond the plain language of CC § 161-l(b). Generally, courts are bound to give statutory language its plain meaning absent a scrivener’s error producing an absurd result. Union Bank v. Wolas, 502 U.S. 151, 112 S.Ct. 527, 534, 116 L.Ed.2d 514 (1991) (Scalia, J., concurring). A review of case law shows that “the standard to correct a scrivener’s error is high: a court must be convinced that the existing statutory language was enacted by mistake and contravenes the law’s true object and design.” Barnette v. Brook Road, Inc., 429 F.Supp.2d 741, 749 (2006) (relying on National Bank of Oregon v. Independent Ins. Agents of America, Inc., 508 U.S. 439, 462, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993)). Additionally, the U.S. Supreme Court has “stressed that ‘[i]n expounding a statute, we must not be guided by a single sen *176 tence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.’ ” National Bank of Oregon, at 455, 113 S.Ct. 2173.
This Court has reviewed the record upon which the BOE made its final determination and notes that nowhere in any part of the record was there any indication that the Tribal Council ever intended to change the date of the primary election for Chief and Vice Chief to 2013. Here, we have unequivocal evidence of mistake, unequivocal evidence of the law’s true object and design and evidence of an absurd result if not corrected. As such, we find that the record substantially supports the conclusions of law and the decision of the BOE that § 161-1(b) contained a scrivener’s error and that “2013” is to be read “2015”. Therefore, no further review of petitioner’s claim is necessary. Accordingly, the Writ of Mandamus is hereby denied and the decision of the BOE is upheld.
In accordance with CC § 161-24, Tribal Council may want to amend CC § 161—1(b) to comply with this decision.

. § 161-16(a) All protest must be submitted to the Board of Elections in writing and on forms provided by the Election Board. All hearings for election irregularities and protests shall be set according to this Section.
[[Image here]]
§ 161—16(f): After all parties have had an opportunity to be heard and ppsent evidence the Board of Elections shall issue a final written decision stating their findings and decision. The decision shall be issued within five business days after the conclusion of the hearing.
§ 161—16(g)(1) Find that the protest did not meet the requirements set forth in this Chapter and dismiss the protest;
[[Image here]]
§ 161—19(a) The Board shall have the power to make final decision on candidate eligibility, proper registrations, absentee eligibility, and protest decision. The Board, in carrying out the decision, shall have the authority to subpoena documents and witnesses and shall have quasi-judicial powers to make the final rulings on all election protests properly before it.
[[Image here]]
§ 161—19(e) The Board shall be responsible for certifying each applicant as eligible or ineligible, notifying each applicant of its decision, and holding appeal hearings as set for in this Chapter.
[[Image here]]
§ 161—19(g) The Board shall investigate irregularities and nonperformance of duty and violation of Tribal election rules and regulations by election officials or other persons. The Board may hold hearings in the course of such investigations in accordance with Section 161-16.
[[Image here]]
§ 161-19(1) The Board shall have the authority to fully implement and carry out all other duties set forth in this Chapter.
[[Image here]]