**FEDERAL ELECTION COMMISSION,**
Plaintiff,

v.

**HALL–TYNER ELECTION CAMPAIGN
COMMITTEE, et al., Defendants.**

No. 78 Civ. 3508.

United States District Court,
S. D. New York.

Sept. 22, 1981.

Charles N. Steele, Lawrence M. Noble, Hal Ponder, Deborah E. McFarland, Washington, D. C., for plaintiff.

John J. Abt, Jeffrey Schwartz, New York City, for defendants.

## OPINION

GAGLIARDI, District Judge.

The Federal Election Commission (the "FEC") commenced this action for a civil penalty and declaratory and injunctive relief against the Hall-Tyner Election Campaign Committee (the "Committee") and the treasurer of the Committee, Frances Bordofsky. The action is based upon alleged violations of the Federal Election Campaign Act (the "FECA"), 2 U.S.C. § 431 et seq.,[1] during the 1976 presidential election campaign. Defendants admit to engaging in the conduct constituting the alleged violations, but assert that the relevant provisions of the FECA as applied to defendants deprive the supporters of the Committee of their First Amendment rights to privacy of association and belief. Both plaintiff and defendants have moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons set forth below, the court has concluded that defendants' motion should be granted and the complaint dismissed.[2]

### Background

Gus Hall and Jarvis Tyner were the candidates of the Communist Party, U.S.A. (the "Party") for the offices of President and Vice-President of the United States, respectively, in the 1976 election. The principal campaign committee [3] supporting their candidacy was the defendant Committee. Defendant Bordofsky was treasurer of the Committee.

The FECA requirements at issue in this action imposed recordkeeping and disclosure

---

1. The FECA was amended by the Federal Election Campaign Act Amendments of 1979, Pub. L.No. 96–187, 93 Stat. 1339 (1980), effective subsequent to the date of the alleged violations in the instant case. Accordingly, all citations are to the statute as codified prior to the 1979 amendments.

2. Also pending before the court is a motion to quash a subpoena duces tecum served by the defendants on the Federal Bureau of Investigation. That motion is rendered moot by the resolution of these motions.

3. Under 2 U.S.C. § 432(e), every candidate for federal office is required to designate a "principal campaign committee" which must comply with the FECA requirements discussed below.

responsibilities on the Committee and Bordofsky. Under the recordkeeping provisions, Bordofsky was required to maintain records identifying the name and address of each person contributing in excess of $50 to the Committee, and the name, address, occupation and principal place of business of each person contributing more than $100. 2 U.S.C. § 432(c). The FECA disclosure provisions required that the Committee include in filings with the FEC the recorded information pertaining to contributors of more than $100. 2 U.S.C. § 434(b)(2).

On March 5, 1976 the general counsel to the Committee rendered a written opinion to the defendants that these recordkeeping and disclosure provisions were unconstitutional as applied to the Committee and its treasurer, Bordofsky. Pursuant to this opinion, the Committee listed 424 contributors of more than $100 as "anonymous" in its reports filed with the FEC.[4] In addition, defendant Bordofsky failed to comply with the FECA recordkeeping requirements with respect to any contributors who elected to remain anonymous.

Thereafter, following an unsuccessful attempt by the FEC to obtain compliance with the statute through informal methods of conference, conciliation, and persuasion, see 2 U.S.C. § 437g(a)(5)(A), the FEC instituted the instant civil enforcement action pursuant to 2 U.S.C. § 437g(a)(5)(B). The parties are agreed that the sole issue before this court is whether the above-cited FECA recordkeeping and disclosure requirements, as applied to the defendants, unconstitutionally abridge the associational rights guaranteed to the supporters of the Committee by the First Amendment.

## Discussion

### I. The Disclosure Requirements

 It is well established that the compelled disclosure of members in or contributors to an organization "can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Buckley v. Valeo*, 424 U.S. 1, 64, 96 S.Ct. 612, 656, 46 L.Ed.2d 659 (1976); *see, e. g., Baird v. State Bar of Arizona*, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1970); *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *Bates v. Little Rock*, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Accordingly, governmental regulations requiring such disclosure must survive exacting judicial scrutiny. *Id.* Under this standard the government must show that the regulations further compelling governmental interests sufficient to justify the burden that compelled disclosure places on constitutionally protected rights. *NAACP v. Alabama, supra*, 357 U.S. at 463, 78 S.Ct. at 1172; *Pollard v. Roberts*, 283 F.Supp. 248, 256–57 (E.D.Ark.) (three-judge court), *aff'd mem.*, 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968).

In *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), the Supreme Court applied these principles in analyzing a constitutional overbreadth attack on the FECA disclosure provisions at issue in the instant case.[5] The attack focused, in part, on the application of the disclosure requirements to minor political parties. The Court identified three substantial governmental interests generally served by the disclosure requirements. First, disclosure permits the electorate to more accurately determine the position of the candidates in the political spectrum, and alerts voters to the obligations of the candidates to special interests. Second, the requirements deter corruption by publicizing large contributions and expenditures. Finally, disclosure along with recordkeeping provides an essential means for detecting violations of the FECA contribution limitations. 424 U.S. at 66–68, 96 S.Ct. at 657–658.

---

4. An additional 76 contributors of more than $100 were identified in accordance with the FECA requirements. *See* Brown Affidavit ¶ 6.

5. *Buckley* addressed the provisions of the FECA prior to the 1976 amendments. At that time, the recordkeeping requirements pertained to all contributions in excess of $10. The 1976 amendments, applicable in the instant case, raised the threshhold amount to $50. Pub. L.No. 94–283, § 103(b), 90 Stat. 480 (1976).

The Court concluded that these important governmental interests are less substantial when the disclosure requirements are applied to minor parties:

> [T]he governmental interest in disclosure is diminished when the contribution in question is made to a minor party with little chance of winning an election. As minor parties usually represent definite and publicized viewpoints, there may be less need to inform the voters of the interests that specific candidates represent....
>
> The Government's interest in deterring the "buying" of elections and the undue influence of large contributors on office-holders also may be reduced where contributions to a minor party ... are concerned, for it is less likely that the candidate will be victorious.

*Id.* at 70, 96 S.Ct. at 659. The Court also recognized that the disclosure requirements create a more onerous threat to First Amendment rights when applied to minor parties:

> These movements are less likely to have a sound financial base and thus are more vulnerable to falloffs in contributions. In some instances fears of reprisal may deter contributions to the point where the movement cannot survive. The public interest also suffers if that result comes to pass, for there is a consequent reduction in the free circulation of ideas both within and without the political arena.

*Id.* at 71, 96 S.Ct. at 659 (footnotes omitted).

■ Although the Court held that a blanket exemption for minor parties is not constitutionally required, it concluded that the disclosure requirements of the FECA cannot be constitutionally applied where the record demonstrates that disclosure will expose contributors and members of the organization to a substantial threat of harassment, which would impermissibly impinge upon protected associational activity. *Id.* at 72–74, 96 S.Ct. at 660–661. The standard for determining whether the demonstrated impact on First Amendment rights is sufficient to require an exemption from the disclosure requirements was set forth as follows:

> The evidence offered need show only a reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties. The proof may include, for example, specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself. A pattern of threats or specific manifestations of public hostility may be sufficient.

*Id.* at 74, 96 S.Ct. at 661.

Accordingly, this court must determine whether the undisputed evidence in the record establishes, as a matter of law, "a reasonable probability" that compelled disclosure of the names of contributors to the defendant Committee "will subject them to threats, harassment, or reprisals from either Government officials or private parties." Defendants rely on five essential items of proof in order to satisfy the *Buckley* standard. Each of these is analyzed below.

1. Defendants cite an extensive body of state and federal legislation which purports to subject members of the Communist Party to both civil disabilities and criminal liability. This legislation clearly manifests the pervasive public hostility that has been, and continues to be, directed towards the Communist Party. *See, e. g.*, Communist Control Act, 50 U.S.C. § 841 *et seq.*[6]

6. 50 U.S.C. § 841 sets forth the following declaration of Congress:

[T]he Communist Party of the United States, although purportedly a political party, is in fact an instrumentality of a conspiracy to overthrow the Government of the United States.... [I]ts role as the agency of a hostile foreign power renders its existence a clear present and continuing danger to the security of the United States. It is the means whereby individuals are seduced into the service of the world Communist movement, trained to do its bidding, and directed and controlled in the conspiratorial performance of their revolutionary services. Therefore, the Communist Party should be outlawed.

2. Defendants submitted to this court a summary of the Final Report of the Select Committee to Study Governmental Operations with Respect to Intelligence Activities, S.Rep.No. 94–755, 94th Cong., 2d Sess. (1976) (the "Senate Report").[7] This report sets forth a detailed history of extensive programs of governmental surveillance and harassment directed at the Party and its members by government agencies. These programs include, for example, the "counterintelligence program" implemented by the Federal Bureau of Investigation ("FBI"), known as "CPUSA COINTELPRO", which involved mailing anonymous letters to employers and spouses of suspected Party members, and provoking IRS investigations of their federal tax returns.[8] Other operations included the extensive use of informants, surreptitious mail opening, and electronic surveillance programs.

3. The record includes an affidavit filed by the Assistant Director of the Intelligence Division of the FBI indicating that the Communist Party, USA is under active investigation by the FBI.[9] The affidavit asserts that the investigation is being conducted in full compliance with "the procedures, requirements and restrictions imposed by the Attorney General Guidelines [for FBI Foreign Intelligence Collection and Foreign Counterintelligence Investigations], Executive Order 12036, applicable statutes, and the Constitution of the United States." The FEC asserts that the existence of a pending lawful investigation may not amount to factual evidence in support of a First Amendment claim under the *Buckley* standard. This contention must be rejected. The publicly admitted existence of ongoing FBI surveillance operations, even though lawful, is highly probative of the extent to which protected associational activities are likely to be chilled by the FECA disclosure requirements.

4. Defendants submitted to the court, *in camera*, the affidavits of twelve persons asserting that they made contributions to the Committee in 1976 only after receiving an assurance of anonymity.[10] The court agreed to maintain the affidavits under seal and not to disclose the identity of the affiants. Defendants provided the FEC with copies of the affidavits with the names and other identifying information expunged. The affidavits set forth the reasons of the affiants for conditioning their contributions on an assurance of anonymity. Each asserts that the insistence on anonymity stems from the history of governmental harassment of the Party and its suspected members and supporters, and the ongoing investigative operations of the FBI. The affiants express fear of a variety of specific consequences that could result from disclosure, including the possible loss of employment, business and citizenship.

The FEC maintains that these affidavits are not relevant to the showing required by *Buckley*, since they merely reflect the subjective opinions of the affiants about the consequences of FECA recordkeeping and disclosure. This contention is without merit. Disclosure requirements may infringe upon First Amendment rights precisely because the possible consequences of disclosure may instill sufficient fear in potential supporters of the organization to deter them from engaging in protected as-

---

7. The court takes judicial notice of the Senate Report. Of course, any facts subject to judicial notice may be properly considered in a motion for summary judgment. *See* 6 *Moore's Federal Practice* ¶ 56.11[9]. Although the FEC challenges the probative value of the report as evidence that FECA disclosure will lead to the harassment of contributors, it has not challenged, through an appropriate affidavit or otherwise, the validity of the Senate Report's factual assertions.

8. This program was in effect from 1956 to 1971.

9. This affidavit was filed in response to defendants' subpoena of documents directed to the FBI. *See* note 2, *supra*. The court has also examined, *in camera*, a memorandum dated October 5, 1976, signed by former Attorney General Edward H. Levi, authorizing continued surveillance of the Party.

10. The affidavits were submitted at the suggestion of the court after the FBI filed objections to defendants' subpoena which requested, *inter alia*, all records of FBI investigations of the Party.

sociational activity. *See Buckley*, 424 U.S. at 71, 96 S.Ct. at 659.[11]

5. Defendant Bordofsky, treasurer of the Committee, has filed an affidavit, essentially asserting that most persons solicited by the Party for contributions refused to contribute unless they were assured of anonymity.

■ The court concludes from the evidence outlined above that defendants have established as a matter of law "a reasonable probability that the compelled disclosure of ... contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties." *Buckley*, 424 U.S. at 74, 96 S.Ct. at 661. The record plainly reflects an extensive history of governmental harassment and public hostility directed at the Party and its members and supporters. This history, in conjunction with the ongoing investigation by the FBI, and evidence of the continuing climate of fear set forth in the affidavits of anonymous contributors to the Committee, amply establishes that severe abridgment of associational rights is likely to follow from the compulsory disclosure of supporters of Communist Party candidates.[12]

■ The substantial infringement on First Amendment rights demonstrated in the record cannot be justified by the governmental interests furthered by applying the FECA disclosure requirements to the defendants. Hall and Tyner received only 58,689 votes in the 1976 election, and the Committee received only $423,894 in campaign contributions.[13] The viewpoint of the Party is clearly defined, and there is nothing in the record indicating that Party candidates could either win elective office or substantially affect the outcome of an election in the foreseeable future.

Accordingly, the FECA provisions for compulsory disclosure of contributors cannot be constitutionally applied to these defendants.

## II. *The Recordkeeping Requirements*

■ Defendants assert that in addition to the disclosure requirements, the FECA recordkeeping requirements, as applied to the Committee and its treasurer, impermissibly infringe upon associational activity protected by the First Amendment. Although records maintained pursuant to 2 U.S.C. § 432(c) are subject to periodic audits and field investigations by the FEC under 2 U.S.C. § 438(a)(8), the FECA does not authorize the disclosure of the records to the public. *Buckley*, 424 U.S. at 84, 96 S.Ct. at 665. Defendants argue that notwithstanding the purportedly confidential nature of these records, the evidence before this court establishes that recordkeeping would chill the exercise of protected associational activity to the same extent as would public disclosure. No such claim was addressed by the Supreme Court in *Buckley*.

---

**11.** Plaintiff also makes a conclusory assertion that the affidavits fail to comply with Rule 56(e). There is no proper basis for this contention. As required by Rule 56(e), each of the affidavits is made on personal knowledge and sets forth "proof which if presented at a formal trial would be competent to support the issues to which it is directed." *Banco de Espana v. Federal Reserve Bank of New York*, 114 F.2d 438, 445 (2d Cir. 1940). In fact "any or all statements in the affidavit that would be admissible in evidence ... if the affiant was on the stand and testifying, is admissible on the issue of whether or not to grant summary judgment." 6 *Moore's Federal Practice* ¶ 56.22[1].

**12.** The FEC asserts that the evidence properly before the court is insufficient to satisfy the *Buckley* standard since the record is devoid of any evidence of harassment with respect to either individuals who signed state ballot ac-cess petitions for Gus Hall and Jarvis Tyner or contributors to their campaign effort whose names were recorded and reported in compliance with the FECA requirements. This contention is without merit. The court may not impose "[a] strict requirement that chill and harassment be directly attributable to the specific disclosure from which the exemption is sought." Such "unduly strict requirements of proof" were expressly disapproved in *Buckley*. 424 U.S. at 74, 96 S.Ct. at 661; *see Wisconsin Socialist Workers 1976 Campaign Committee v. McCann*, 433 F.Supp. 540, 548 (E.D.Wis. 1977).

**13.** Contributions to other campaign committees supporting Hall and Tyner only amounted to an additional $131,989. *See* Brown Affidavit ¶¶ 6-9.

The court concludes that under the unique facts of the instant case, the FECA recordkeeping requirements could indeed significantly infringe upon the exercise of First Amendment rights. The FBI is actively engaged in an ongoing investigation of the Communist Party, U.S.A. It is surely reasonable, therefore, for potential contributors to the Party to expect that the FBI would discover their identity through the use of informants or other investigative techniques, if their names were recorded in records maintained by the Committee. The ongoing investigation together with the demonstrated history of pervasive governmental harassment aimed at Party members establishes a "reasonable probability" that FECA recordkeeping would subject contributors "to threats, harassment, or reprisals from either Government officials or private parties." The chilling effect on associational interests is further evidenced by the twelve affidavits submitted to the court by anonymous contributors, which indicate each affiant's fear that the information contained in Committee records would fall into the hands of the FBI.

The FEC maintains that the substantial governmental interests underlying the FECA recordkeeping requirements justify whatever burden is placed on the exercise of First Amendment rights. Indeed, this court is mindful of the fact that "there are governmental interests sufficiently important to outweigh the possibility of infringement, particularly when the 'free functioning of our national institutions' is involved." *Buckley, supra,* 424 U.S. at 66, 96 S.Ct. at 657, *quoting Communist Party v. Subversive Activities Control Bd.,* 367 U.S. 1, 97, 81 S.Ct. 1357, 1411, 6 L.Ed.2d 625 (1961). The FEC's principal objection to exempting defendants from recordkeeping is that it would prevent effective enforcement of the FECA contribution limitations.[14] Accordingly, in order to evaluate the governmental interests served by applying the record-keeping requirements to the defendants, it is necessary to analyze the interests furthered by effectively enforcing the FECA contribution limitations against contributors to the Committee.

In *Buckley,* the Court held that the FECA contribution limitations can be constitutionally justified by the primary governmental interest served by the FECA as a whole. This interest is:

> to limit the actuality and appearance of corruption resulting from large individual financial contributions.... To the extent that large contributions are given to secure a political *quid pro quo* from current and potential office holders, the integrity of our system of representative democracy is undermined....
>
> Of almost equal concern as the danger of actual *quid pro quo* arrangements is the impact of the appearance of corruption stemming from public awareness of the opportunities for abuse inherent in a regime of large individual financial contributions.

*Id.* 424 U.S. at 26–27, 96 S.Ct. at 638–639. It is readily apparent that this important governmental interest is not significantly furthered by effective enforcement of the contribution limits against contributors to the Committee. As observed above, there is nothing in the record which suggests that Party candidates could in the foreseeable future either win elective office or have a significant impact on the outcome of an election. Therefore, no one is likely to contribute to a Communist Party campaign committee with a reasonable expectation of exacting a *quid pro quo* from a current or potential elected official. Accordingly, the interest furthered by providing the FEC with data to enforce the contribution limitations against the contributors to the Committee is not sufficiently compelling to justify the injury resulting to important First Amendment rights.[15]

14. The relevant contribution limitations are currently codified at 2 U.S.C. § 441a.

15. The FEC also vaguely asserts that the absence of proper records will impede enforcement of other FECA prohibitions. There is, however, no basis in the record for concluding that substantial governmental interests will be furthered should more stringent enforcement of

Therefore, the FECA recordkeeping requirements are unconstitutional as applied to the defendants.

### Conclusion

The court concludes that the undisputed facts in the record establish as a matter of law that the relevant provisions of 2 U.S.C. §§ 432(c) and 434(b)(2), as applied to defendants, violate the First Amendment to the Constitution. Plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted, and the complaint is dismissed.

So Ordered.

other FECA provisions against contributors to the Committee be made possible by record-

keeping pursuant to 2 U.S.C. § 432(c).