**In re Gisela EGIDI, Debtor.**

**Barry E. Mukamal, as Trustee, not in his individual capacity, Plaintiff,**

**v.**

**Bank of America as successor by merger with MBNA America, Defendant.**

**Bankruptcy No. 06–15488–BKC–LMI. Adversary No. 07–01532–BKC–LMI–A.**

United States Bankruptcy Court, S.D. Florida.

April 4, 2008.

Timothy S. Kingcade, Esq., Miami, FL, for Debtor.

James B. Miller, Esq., Miami, FL, for Plaintiff.

Gary J. Lublin, Esq., Orlando, FL, for Defendant.

### *ORDER GRANTING MOTION FOR SUMMARY JUDGMENT*

LAUREL M. ISICOFF, Bankruptcy Judge.

This matter came before this Court on Motion for Summary Judgment (the "Mo-

tion") (CP # 22) filed by the Plaintiff, Barry E. Mukamal as Trustee ("Trustee") of the bankruptcy estate of Gisela Egidi. The Court having reviewed the Motion and the response thereto (the "Response") filed by the Defendant Bank of America ("BofA" or "Bank") (CP # 25), the Court grants the Motion for the reasons set forth herein.

## BACKGROUND FACTS[1]

Around August of 2006, Gisela Egidi ("Debtor") decided to consolidate her debt into one credit card. Using other credit cards and apparently using at least one convenience check from Capital One, Debtor made the following payments to MBNA America ("MBNA"): [2]

a) August 8, 2006—$4,000.00

b) August 10, 2006—$10,065.00

c) August 12, 2006—$2,000.00

(collectively the "Bank Payments"). The Debtor filed bankruptcy on October 28, 2006.

## PROCEDURAL HISTORY

The Trustee brought suit against BofA, as successor to MBNA, to recover the $16,065, alleging that the Bank Payments are avoidable as transfers under 11 U.S.C. § 547(b). BofA admits that a total of $16,065 was paid into Debtor's MBNA account by payments made on August 8, 10, and 12, 2006,[3] but BofA does not know the source of the payments and believes they may have been bank-to-bank transfers.

The Bank sets forth three affirmative defenses in its answer: (I) insufficiency of process or service of process,[4] (2) no transfer of estate property, and (3) no diminution of estate assets.

In the Motion, the Trustee argues that there are no material disputed facts regarding the elements necessary to demonstrate BofA received a preferential transfer and, that because the Debtor was in control of the cash advances and balance transfers that were used to pay BofA, the transfers were all property of the estate. In support of the Motion, the Trustee relied on the Debtor's deposition as well as a billing statement from BofA showing the three payments that were made and a copy of a cancelled check used to make one of the payments. Although the Motion was verified, the latter two documents were attached to the Motion without any supporting affidavits. Finally, the Trustee argues in the Motion, somewhat presciently, that since BofA did not raise earmarking as an affirmative defense, BofA is precluded from relying on that defense.

In its response, the Bank argues that the Trustee is not entitled to summary judgment because the Trustee did not provide admissible evidence as required by Fed.R.Civ.P. 56(e) in support of his motion, and that a bank-to-bank transfer is not a preferential transfer under 11 U.S.C. § 547. In support of this argument, BofA relies, in part, on the "earmarking" defense.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure is applicable to this adversary

---

1. These facts are taken from the Complaint, the Motion for Summary Judgment and from the Debtor's deposition taken on April 25, 2007 (CP # 20).

2. MBNA was later acquired by Bank of America.

3. 81 days passed between the first payment on August 8th and Debtor's petition on Oct. 28th.

4. The service of process issue was either resolved or waived.

proceeding by virtue of Fed. R. of Bankr.P. 7056. Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In considering whether a genuine issue of material fact remains for trial, the court must "view all evidence and make all reasonable inferences in favor of the party opposing the summary judgment." *Loren v. Sasser*, 309 F.3d 1296, 1301–1302 (11th Cir.2002). However, "a mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* at 1302 (*quoting Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990)). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## THE UNDISPUTED MATERIAL FACTS

There is no dispute as to any of the material facts. The Debtor did make three payments to BofA. These payments occurred within 90 days of the petition date. Those three payments were made using credit card balance transfers. [Deposition of Gisela Egidi, 29:17–30:3 (CP # 20) ]. BofA does not dispute that the Bank Payments were made to MBNA within ninety days of the Debtor's bankruptcy, on account of an antecedent debt, and that there was no contemporaneous, or in fact any, new value extended to the Debtor by MBNA.

█ BofA asserts that the Trustee did not include admissible evidence to support his assertions in the motion that the funds were "even temporarily in the [Debtor's] bank account" that the Debtor "ever exercised control over the funds," or that the transfers depleted estate assets. [Defendant's Response to Trustee's Motion for Summary Judgment, pg. 5–7 (CP # 25) ]. First, BofA ignores or overlooks the Trustee's reliance on the Debtor's deposition. Second, Fed.R.Civ.P. 56 does not require that a party rely on admissible evidence in support of a motion for summary judgment.

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.... [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c), which refers to "the affidavits, *if any* " (emphasis added), suggests the absence of such a requirement. And if there were any doubt about the meaning of Rule 56(c) in this regard, such doubt is clearly removed by Rules 56(a) and (b), which provide that claimants and defendants, respectively, may move for summary judgment "*with or without supporting affidavits* " (emphasis added). The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth

in Rule 56(c), is satisfied. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.

*Celotex Corp. v. Catrett,* 477 U.S. at 323–324, 106 S.Ct. 2548.

Thus, resolution of this dispute lies not with the presence or absence of "admissible evidence" to support the Motion, but rather, in whether the Trustee has successfully demonstrated there is no dispute as to any material fact and that he is entitled to judgment in his favor as a matter of law.

### THE ELEMENTS OF A PREFERENCE

■ "A preference is a 'transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankruptcy estate.'" *Barrett Dodge Chrysler Plymouth, Inc. v. Cranshaw (In re Issac Leaseco, Inc.),* 389 F.3d 1205, 1209 (11th Cir.2004) (quoting *Union Bank v. Wolas,* 502 U.S. 151, 160–161, 112 S.Ct. 527, 116 L.Ed.2d 514(1991)). The trustee of the bankruptcy estate is authorized to recover certain transfers made within 90 days of the petition date if the trustee can demonstrate the transfer is an avoidable preference pursuant to the provisions 11 U.S.C. § 547(b).

In accordance with section 547(b), and subject to certain defenses BofA has acknowledged are not applicable here,

the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

  (A) on or within 90 days before the date of the filing of the petition; or

  (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of the transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

  (A) the case were a case under chapter 7 of this title;

  (B) the transfer had not been made; and

  (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

[3–5] While the Bank does not admit either the Debtor's insolvency or that it has received more than it would have received in the absence of the Bank Payments, neither has the Bank provided or suggested any information to dispute the presumption of insolvency under 11 U.S.C. § 547(f) or the information included in the Debtor's schedules. BofA has not suggested that the Debtor's schedules are false or inaccurate so, for purposes of summary judgment it is appropriate for me to consider the information in the court files in making my ruling.[5]

The Debtor's schedules reflect assets, including equity in a home claimed as ex-

---

**5.** I may take judicial notice of this court's file,    *Manix Energy Ltd. v. James (In re James),* 300

empt by Debtor based on tenancy by the entireties, of less than $30,000. Debtor's scheduled undisputed, unsecured claims are in excess of $110,000; filed unsecured claims exceed $53,000. Even if the Trustee seeks, and successfully captures, the Debtor's equity in the home, no unsecured creditor will be paid in full. Consequently, there is no question that BofA received on account of the Bank Payments more than it would otherwise receive in this chapter 7 case.

Thus resolution of this case revolves around a disputed issue of law, that is whether the funds used to make the Bank Payments were "an interest of the debtor in property." BofA argues that the Bank Payments were not transfers of the debtor's property because first, the property used by the Debtor to make the Bank Payments was not property of the Debtor, and, second, the Bank Payments were not a preference because of the earmarking doctrine.

### EARMARKING AND PREFERENCES

Earmarking is a judicially created exception to the general rule that certain transfers are recoverable as preferences by the trustee in bankruptcy. There is a debate amongst the courts whether the earmarking doctrine is an element of "property of the debtor" or it is an entirely separate doctrine, whose applicability is separate and distinct from the criteria of section 547. *Compare McCuskey v. Nat'l Bank of Waterloo (In re Bohlen Enter., Ltd.),* 859 F.2d 561 (8th Cir.1988) (earmarking addresses the issue of whether transfer of an interest of a debtor in property has occurred), *and Montgomery,* 983 F.2d 1389 (6th Cir.1993) (earmarking is an exception to the property of the estate analysis), *with Manchester v. First Bank & Trust Co. (In re Moses),* 256 B.R. 641, 648 (10th Cir. BAP 2000) ("[E]armarking does not assist in defining the elements of a preference under § 547(b). It is merely a judicially created exception to the requirements of § 547(b).").[6]

As one court noted, the earmarking doctrine has been applied through three different approaches. *See In re Moses,* 256 B.R. 641. The first approach, which has been widely adopted by a number of courts, is a three-part test described by the Eighth Circuit in *In re Bohlen,* 859 F.2d 561. The Bohlen test sets out three elements that must be met to qualify a transfer as earmarked. They are:

(1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt;

(2) performance of that agreement according to its terms; and

B.R. 890, 894 (Bankr.W.D.Tex.2003), and may rely on judicially noticed facts in ruling. *See Fed. Election Comm'n. v. Hall–Tyner Election Campaign Comm.,* 524 F.Supp. 955 (S.D.N.Y.1981). *Accord Brown v. Brock,* 169 Fed.Appx. 579 (11th Cir.2006); *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n,* 137 F.3d 1293 (11th Cir. 1998). While the debtor is not a party, for purposes of summary judgment, since the schedules were signed under penalty of perjury, I may rely on their content. I may also rely on the claims filed, since under the Bank-

ruptcy Code the claims are deemed valid unless objected to. 11 U.S.C. § 502(a).

**6.** At least one commentator has suggested that the earmarking doctrine was subsumed in the "contemporaneous exchange for new value" requirement of section 547 and has no further legitimacy as a limitation on avoidable preferences. David Gray Carlson and William H. Widen, "The Earmarking Defense To Voidable Preference Liability: A Reconceptualization," 73 Am. Bankr.L.J. 591, 617 (1999).

(3) the transaction viewed as a whole (including the transfer in of the new funds and the transfer out to the old creditor) does not result in any diminution of the estate

*Id.* at 565.

The second approach focuses on the "control" exercised by the debtor over the transfer. The control test, as described by the Tenth Circuit B.A.P. in *In re Moses,* looks at (i) whether the "new" creditor restricted the use of the funds: (ii) whether the debtor had physical control of the funds and (iii) whether the debtor had the ability to direct to whom the funds would be paid. 256 B.R. at 650. Control was defined earlier in the dissenting opinion by Judge Flaum of the Seventh Circuit in *In the Matter of Smith,* 966 F.2d 1527 (7th Cir.1992).

[C]ontrol has two components: first, the power to designate which party will receive the funds, and second, the power to actually disburse the funds at issue to that party. In other words, control means control over identifying the payee, and control over whether the payee will actually get paid.

966 F.2d at 1539 (J. Flaum dissenting).[7]

The third approach, the most liberal approach, looks only at whether the estate has been diminished. Under this test, the "mere substitution" of one creditor for another does not "diminish" the estate, and therefore such a transfer is not a preference. *See, e.g., Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351 (5th Cir.1986); *Genova v. Rivera Funeral Home (In re Castillo),* 39 B.R. 45, 46

(Bankr.D.Colo.1984); *Young v. Scandore Paper Box Corp. (In re Lucasa Int'l, Ltd.),* 13 B.R. 596 (Bankr.S.D.N.Y.1981).

Although the Eleventh Circuit has not ruled directly on which test should be used to determine whether a transfer should be insulated by the earmarking doctrine, it has, indirectly, adopted the stricter *Bohlen* approach. In *American Bank of Martin County v. Leasing Services Corp. (In re Air Conditioning, Inc.),* 845 F.2d 293 (11th Cir.1988). *cert. denied sub nom. First Interstate Credit Alliance, Inc. v. American Bank of Martin County,* 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584 (1988), the Eleventh Circuit affirmed the lower courts' findings that a transfer was preferential. The court noted that the defendant might have been able to prove that funds used by the debtor to purchase a certificate of deposit were not the debtor's funds, but it did not do so. Citing the case of *In re Sun Railings, Inc.,* 5 B.R. 538 (Bankr.S.D.Fla.1980), among others, the court wrote "[w]hen a third party makes a loan to a debtor which enables the debtor to satisfy a creditor's claim, the proceeds of the loan do not become part of the debtor's estate." *In re Air Conditioning, Inc.,* 845 F.2d at 297. The court in *Sun Railings* wrote "[w]hen a third party loans money to a debtor for the specific purpose of repaying a designated debt, the money never becomes part of the estate available for distribution to all creditors and, therefore, no preference is created." 5 B.R. at 539 (citing 4 Collier on Bankruptcy ¶ 547.25 n. 6).[8] Even absent the guidance of the Eleventh Circuit I would follow the more restrictive view outlined in *Bohlen* and *In re Moses* and hold

---

**7.** The majority in *Smith* followed the *Bohlen* test.

**8.** Each of the courts cited by the Eleventh Circuit in *Air Conditioning, Inc.* referenced the same quote from Collier's.

that, however the earmarking doctrine is characterized, it only applies when the new lender directs the specific recipient, and use, of the funds at issue.

■■■ There is no suggestion that Capital One directed the Debtor to pay MBNA; in fact, the Debtor testified the transfers were her decision. [Deposition of Gisela Egidi, 30:4–7]. Accordingly, I find the earmarking doctrine is not applicable, and thus I do not need to address the Trustee's argument that BofA waived earmarking as an affirmative defense by failing to raise the defense in its answer.[9]

## PROPERTY OF THE DEBTOR

■■ Having determined that the earmarking doctrine is inapplicable in this case, I must nonetheless determine whether the Bank Payments constitute transfers of "property of the debtor."

BofA argues that the transferred funds are not property of the Debtor because the transfer was merely the substitution of one

---

**9.** An affirmative defense is established when the defendant "admits the essential facts of a complaint and sets up other facts in justification or avoidance." *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F.Supp.2d 1314, 1318 (S.D.Fla.2005). A defense that merely points out a defect in the plaintiffs prima facie case, such as demonstrating a missing element of the claim, is not an affirmative defense. *Flav–O–Rich, Inc. v. Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir.1988). There is disagreement among courts over whether earmarking is an affirmative defense; most courts hold that it is not. *Compare Metcalf v. Golden (In re Adbox, Inc.)*, 488 F.3d 836, 842 (9th Cir.2007) (the earmarking defense is not an affirmative defense "but rather a challenge to the trustee's claim that particular funds are part of the bankruptcy estate"), and *In re Libby Int'l, Inc.*, 247 B.R. 463, 467 (8th Cir. BAP 2000) ("The earmarking doctrine is not strictly an affirmative defense under Section 547(c), under which the defendant has the burden of proof, 11 U.S.C. § 547(g), but, rather, is an argument arising out of the language in section 547(b) which requires that, as an element of the trustee's proof, recovery be based upon a transfer of an interest of the debtor."), *and In re Safe–T–Brake*, op cit. (the earmarking doctrine is not affirmative defense to otherwise avoidable transfer, but a shorthand way of denying that what was transferred was interest of debtor in property), *and In re Int'l Ventures, Inc.*, 207 B.R. 618 (Bankr.E.D.Ark.1997) (earmarking is a defense arising out of an element the plaintiff must prove, and therefore is not an affirmative defense), *with Shubert v. Lucent Tech., Inc. (In re Winstar Comm., Inc.)*, 348 B.R. 234 (Bankr.D.Del.

2005) (holding that earmarking is an affirmative defense that is waived if not raised in the answer). The Eleventh Circuit has not ruled on this issue.

Moreover, even if I were to find earmarking is an affirmative defense, I might, nonetheless choose not to impose waiver as a consequence of the Bank's initial failure to raise it. While acknowledging the general rule of waiver, the Eleventh Circuit has cautioned against its rote application:

[T]he liberal pleadings rules established by the Federal Rules of Civil Procedure apply to the pleading of affirmative defenses. We must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule. [ ]The purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate.... When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice. And, when the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue.

*Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir.1988) (internal citations omitted). In this case, there is clearly no issue of prejudice or surprise because the Bank pled affirmative defenses that encompass at least some of the elements of earmarking and it is clear the Plaintiff anticipated, and responded to, the defense in his Motion for Summary Judgment. Thus, the Plaintiff could not demonstrate he was prejudiced by the Bank's failure to plead the defense.

creditor for another. Since the funds were never in the Debtor's account, the funds were the property of the transferring bank, not the property of the Debtor. The Bank also submits, while conceding nothing in section 547(b) addresses this, that the purpose of a preference is to avoid depletion of the estate, and, because there was never a depletion of any asset of the Debtor, no preference occurred.

■■■ The Bankruptcy Code does not define "property of the debtor." However, the Supreme Court has held the term "property of the debtor" in the context of section 547 is "best understood as that property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceedings." *Begier v. IRS,* 496 U.S. 53, 58–59, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). "Property of the estate" is defined in 11 U.S.C. § 541 and under that provision should be interpreted broadly. *Id. See also U.S. v. Whiting Pools,* 462 U.S. 198, 204–205, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Moses,* 256 B.R. 641. While the Eleventh Circuit has not ruled directly on the definition of "property of the estate" or "property of the debtor" in the context of a preference action, it has done so in the context of a fraudulent transfer action. In *Nordberg v. Sanchez (In re Chase & Sanborn Corp.),* 813 F.2d 1177 (11th Cir.1987), the Court, in determining that the funds that passed through a debtor's account were not property of the debtor, wrote—

> Although the debtor corporation had possession of the funds in controversy by virtue of the transfer to the account, the record demonstrates that the debtor corporation did not have sufficient control over the funds to warrant finding that the funds were the debtor corporation's property.

813 F.2d at 1180. In reaching this holding, addressed by the court as a matter of first impression, the court looked at preference cases.

> The rules established in the avoidable preference cases are applicable to a certain extent in the context of fraudulent transfers. The purpose of avoidance of both types of transfers is to prevent a debtor from diminishing, to the detriment of some or all creditors, funds that are generally available for distribution to creditors. Consequently, any funds under the control of the debtor, regardless of the source, are properly deemed to be the debtor's property, and any transfers that diminish that property are subject to avoidance.

*Id.* at 1181. The court ruled that in determining the issue of control the court must "evaluate a transaction in its entirety." *Id.*

Recently, in *In re Bankest Capital Corp.,* 374 B.R. 333 (Bankr.S.D.Fla.2007), another fraudulent transfer case, in determining whether a debtor had sufficient control of funds for the funds to be property of the debtor, this court applied the control test articulated by Judge Flaum in his dissent in *In re Smith,* as adopted by this district in a preference case, *In re Safe-T-Brake of South Florida, Inc.,* 162 B.R. 359 (Bankr.S.D.Fla.1993). The *Bankest* court further observed

> Some courts have complemented [sic] the control analysis by asking whose interests are primarily served by the challenged transaction. Where the transaction primarily serves the interests of the debtor, courts generally find a transfer of "property of the debtor." ... Conversely, where the debtor's interests do not provide the impetus for the transaction, ... courts are more

likely to find that there was no fraudulent transfer of property of the debtor.

374 B.R. at 339 (citations omitted).

In this case, the Debtor testified in her deposition that she decided to consolidate her credit card obligations and she made the decision to make balance transfers from one or more of the credits cards to MBNA. BofA has not disputed this testimony in its Response; its only position is, incorrectly, that the Trustee did not demonstrate the source of payment. Based on these undisputed facts, the Debtor had control of the decision to transfer the funds, and therefore, under the control test articulated by the Eleventh Circuit and this district, the funds used by the Debtor were her property, because even if the funds were never in her actual possession, the disposition of those funds was in her control.

■ BofA's arguments that there was no transfer of property of the Debtor and the transfer was not otherwise a preferential transfer, because there is no loss to an estate of an asset when a bank-to-bank transfer occurs, run contrary to the general rule that a transfer of borrowed funds by the debtor constitutes a transfer of the debtor's property if the debtor is control of the transfer. *See Yoppolo v. Greenwood Trust, Co. (In re Spitler)*, 213 B.R. 995 (Bankr.N.D.Ohio 1997); *In re Smith*, 966 F.2d 1527, *In re Bohlen Enter.*, 859 F.2d 561; 4 Collier on Bankruptcy § 547.03, at 547–28(15th ed.1992).

Credit card balance transfers and transfers by convenience check have been found to be a transfer of the debtor's property. In *Meoli v. MBNA American Bank, N.A. (In re Wells)*, 2008 Bankr.LEXIS 283 (B.A.P. 6th Cir. Feb. 11.2008), the Sixth Circuit decided this issue on facts similar to those presented here. In *In re Wells*, the debtor made two $5,000 payments to a credit card during the preference period by using another credit card to make the payments. The trustee brought an adversary proceeding to recover the funds as preferences. The credit card company argued, *inter alia*, that the transfer was not a preference because the transferred funds were not property of the debtor and because the earmarking doctrine applied. In determining that the transferred funds were property of the debtor, the Sixth Circuit relied on *In re Smith* and *McLemore v. Third National Bank (In re Montgomery)*, 983 F.2d 1389 (6th Cir. 1993), reasoning that "because the debtor could have used the credit extended ... to purchase assets instead of paying his debt, the assets in the estate at the time of bankruptcy were less than they could have been." *In re Wells*, at *9 (*quoting In re Montgomery*, 983 F.2d at 1395). *Accord, In re Moses*, 256 B.R. at 649 ("Generally, a new creditor's unconditional promise to loan a debtor money to pay the debtor's antecedent debt is property in which the debtor holds an interest...."). *But see In Loveridge v. The Ark of Little Cottonwood, Inc. (In re Perry)*, 343 B.R. 685 (Bankr. D.Utah 2005); *Parks v. FIA Card Serv., N.A. (In re Marshall)*, 372 B.R. 511 (Bkrtcy.D.Kan.2007) ("At most a debtor's credit constitutes merely potential wealth' which 'on its own serves no immediate benefit to the estate in bankruptcy.' Creditors cannot force a debtor to use credit to provide assets for distribution." *Id.* at 516 (*quoting In re Perry*, 343 B.R. at 688)).

## CONCLUSION

■ When a debtor uses a loan availability to pay one creditor, thereby "moving the debt" from one creditor to another,

if the debtor has controlled the decision to pay and to whom the payment should be made, the debtor has sufficient control of the funds used for those funds to constitute property of the debtor. That having been the case in this matter, the Trustee is entitled to judgment as a matter of law.

The Trustee is directed to submit a final judgment consistent with this Order.