UNITED STATES BANKRUPTCY COURT 
 DISTRICT OF MASSACHUSETTS 
 WESTERN DIVISION 
 ) 
In re: ) Chapter 7 
 ) Case No.19-30768-EDK 
 ) 
LEROYR. CLINK ) 
TERRYR. CLINK, ) 
 ) 
 Debtors. ) 
 ) 
 ) 
DAVIDW. OSTRANDER, ) Adversary Proceeding 
CHAPTER 7TRUSTEE, ) No.21-03007 
 ) 
 Plaintiff, ) 
 ) 
v. ) 
 ) 
PATRICIA M. HEBERT, ) 
 ) 
 Defendant. ) 
 ) 
 MEMORANDUM OF DECISION 
BeforetheCourtisamotiontodismiss(the“MotiontoDismiss”)anadversaryproceeding
filedbytheChapter7trustee,DavidW.Ostrander(the“Trustee”),inthebankruptcycaseofLeroy
R. Clink and Terry R. Clink (the “Debtors”) against Patricia M. Hebert (“Hebert”). In the
complaint,theTrusteeallegesthatcertainpaymentsmadetoHebertbytheDebtorsviacreditcard
transactions constitute fraudulent transfers that the Trustee may avoid and recover for the benefit
of the bankruptcy estate. Because the Court concludes that the complaint contains sufficient
allegations tostatea plausibleclaim,the Motionto Dismisswill be denied. 
I. FACTS ANDPOSITIONSOFTHE PARTIES 
The following recitation of facts is taken from the allegations in the complaint, matters of
recordin the underlying bankruptcycase, documentsreferenced in and attached to the complaint,
and othermatters of which the Courtmaytake judicial notice.1 
The Debtors filed a voluntary petition under Chapter 7 of the United States Bankruptcy

Code (the “Bankruptcy Code” or the “Code”)2 on September 26, 2019 (the “Petition Date”) and
indicated intheir Statement of Financial Affairsthat within2years prior tothe PetitionDate they
paidHebertforlegalservicesprovidedtotheDebtors’daughterinconnectionwiththedaughter’s
divorce. The Trustee determined that from October 2017 through July 2018, the Debtors made
ten payments to Hebert, totaling $62,860.46, by either charging the payments directly to the
Debtors’creditcardaccountsorbyusingconveniencecheckstodrawonthecreditcardaccounts.
OnApril29,2021,theTrusteefiledtheinstantadversaryproceedingagainstHebertassertingthat
thepaymentstoHebertarerecoverableasfraudulenttransfers,asthepaymentsweremadewithin
2 years of the Petition Date, the Debtors did not receive reasonably equivalent value for the

transfers, and at the time the payments were made, the Debtors were insolvent or were rendered
insolvent and had either the intent to incur, belief they would incur, or should have reasonably
believed they would incur debts beyond their ability to pay as the debts came due.3 Specifically,

1 While a court generally may not consider documents that are extrinsic to the complaint in ruling on a
motion to dismiss, there are exceptions “for documents the authenticity of which are not disputed by the
parties;forofficialpublicrecords;fordocumentscentraltoplaintiffs'claim;orfordocumentssufficiently
referredtointhecomplaint.” Alt.Energy,Inc.v.St.PaulFire&MarineIns.Co.,267F.3d30,33(1stCir.
2001)(quotingWattersonv.Page,987F.2d1,3(1stCir.1993)). 
2 See 11 U.S.C. §§ 101 et seq. All statutory references are to provisions of the Bankruptcy Code unless
otherwisestated. 
3TheTrusteealsoassertsthattheDebtorsowedonecreditor(whohasfiled4proofsofclaimtotalingmore
than$74,000.00)approximately$12,128atthetimethefirstpaymenttoHebertwasmade.
theTrusteeassertsthatthepaymentstoHebertconstitutefraudulenttransfersthattheTrusteemay
avoid under § 544(b) pursuant to Mass. Gen. Laws ch. 109A, §§ 5(a)(2), 5(a)(8), 6(a), and 8
(Counts I and II) and under §548(a)(1)(B) (Count III), which avoided transfers the Trustee can
recover andpreserve forthe benefit of the bankruptcyestate under §§550and 551.
Requesting dismissal of the adversary proceeding, Hebert argues that the Trustee cannot

avoidthepaymentsbecausetheywereneithermadebytheDebtorsnorwithfundsthattheDebtors
hadapropertyinterestin. First,Hebertassertsthatthecreditcardissuersmadethepaymentsand
nottheDebtorsthemselves. Therefore,Hebertsays,theDebtorswerenotthe“transferors”ofthe
payments. Hebert further argues that the payments cannot constitute fraudulent transfers because
the Debtors did not transfer any of the Debtors’ property that otherwise would have become
propertyof the bankruptcy estate ascontemplatedbythe Bankruptcy Code or statelaw.4

II. DISCUSSION 
TodecideamotiontodismissforfailuretostateaclaimforreliefunderFed.R.Civ.Proc.

12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b), the Court
must accept the averments in the complaint as true and determine whether those alleged facts are
sufficient to “state a claim to relief that is plausible on its face.” Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 570 (2007); see also Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir.
2000).5 To assess plausibility, the Court must consider whether “the complaint warrant[s]

4BasedontheissuesraisedandargumentsmadebyHebertinHebert’sBriefSupportingDismissalandat
thehearingontheMotiontoDismiss,theCourtwillconsiderHeberttohaveconcededtheTrustee’sability
toestablishtheotherrequiredelementsofafraudulenttransferforpurposesoftheMotiontoDismiss.
5 Although the Motion to Dismiss does not contain a specific reference to Rule 12(b)(6), Hebert
acknowledgesinabriefsupportingthemotionthatRule12(b)(6)istheapplicablelegalstandard.
dismissal because it failed in tototo render plaintiff’s entitlement to reliefplausible.” Rodriguez-
Reyes vs. Molina-Rodriguez, 711 F.3d 49, 55 (1st Cir. 2013) (quoting Bell Atlantic Corp. v.
Twombly, 550U.S.554, 569n.14(2007)). 
A. Transfers 
Allowing the recovery of fraudulent transfers protects creditors from prepetition

transactionsundertakenbythedebtorwhichdepletethepoolofassetsavailabletosatisfycreditors’
claims. DeGiacomo v. Sacred Heart Univ. Inc.(In re Palladino), 942 F.3d 55, 58 (1st Cir. 2019)
(citing 5 Collier on Bankruptcy ¶ 548.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.
2017)). To that end, both §§ 544(b)(1) and 548(a)(1)(B) require that the payments to Hebert
constitutedtransfersoftheDebtors’interestinpropertyinordertoberecoverablebytheTrustee.
There is no dispute that the payments to Hebert were made by charges to or convenience
checks from the Debtors’ credit card accounts. Hebert argues that because the credit card issuers
transferred the funds, the payments were not made by the Debtors. The Trustee counters that the
Debtors’creditcardissuersdidnotindependentlydecidetopayHebert;instead,theDebtorsmade

the payments by taking affirmative action to incur debt on the Debtors’ credit cards via charges
and/or conveniencechecksmade out to Hebert. 
Notably, in specifying that a trustee may avoid any transfer of property of the debtor, the
plain language of both §§ 544(b)(1) and 548(a)(1)(B) does not limit the Trustee’s avoidance
powers to transfers where the Debtors act as the “transferors.” And § 101(54) of the Bankruptcy
Codebroadlydefines“transfer”toincludeindirect,absolute,orconditionalmodesofpartingwith
property or an interest in property. 11 U.S.C. § 101(54). Neither party disputes that the Debtors
made arequest totheircredit cardissuers toborrowfunds witha directionto forwardthose funds
to Hebert. 
Since “transfer” includes indirect modes of disposition and neither §§ 544(b)(1) nor
548(a)(1)(B) limit the Trustee’s avoidance power to transfers made by a debtor, the Court finds
Hebert’s focus on the transferor to be misplaced. As the Trustee asserts, and Hebert does not
dispute, the Debtors’ credit card issuers forwarded funds to Hebert solely because the Debtors
directed them to do so. The Debtors exercised control over disbursement and thereby utilized an

indirect mode to voluntarily part with funds borrowed from their credit card issuers when they
requestedtoincur debt anddirectedthat the borrowedfunds be providedtoHebert.
B. Interestof theDebtor inProperty 
Thequestionremains,however,astowhetherthepaymentstoHebertconstitutedtransfers
of the Debtors’ interest in property. An “interest of the debtor in property” is not defined in the
Bankruptcy Code. The Supreme Court has found that the phrase “an interest of the debtor in
property,” for purposes of avoidance actions, is coterminous with “property of the estate” as
definedby§541(a)(1),“whichincludesalllegalorequitableinterestsofthedebtorinpropertyas
of the commencement of the case” wherever located and by whomever held. Begier v. Internal

Revenue Service, 496 U.S. 53, 58 and n. 3 (1990). A debtor’s property interests as of the date of
atransferaredeterminedbystatelaw. Butnerv.UnitedStates,440U.S.48,54(1979). However,
whilestatelawcreatesunderlyingpropertyinterests,federalbankruptcylawdeterminestheextent
to which a property interest is property of the bankruptcy estate. In re TelexFree, LLC, 941 F.3d
576, 584 (1st Cir. 2019) (citing Butner, 440 U.S. at 55); Rine v. Rine Auctioneers Inc. v. Douglas
Cty. Bank &Tr.Co.(Inre Rine & Rine Auctioneers,Inc.), 74F.3d854,857-58 (8thCir. 1996)).
Property interests are created, and their extent is defined, “by existing rules or
understandings that stem from an independent source such as state laws.” Haverhill Manor, Inc.
v.Comm’rofPub.Welfare,368Mass.15,23(1975)(quotingRegentsofStateColls.v.Roth,408
U.S. 564, 577 (1972)). While the Court has not discerned, and neither party has cited to, any
Massachusetts authority specifically addressing whether a debtor has a property interest in funds
borrowedfromacreditcardissuerwhoforwardsthosefundsdirectlytoathirdpartyatthedebtor’s
direction, “property” is broadly defined as “anything that may be subject to ownership” for
purposesoftheMassachusettsUniformFraudulentTransferAct,M.G.L.ch.109A,§2. Generally,

in determining whether a transfer constitutes a transfer of “an interest of the debtor in property,”
most courts have applied a dominion/control test, which the Trustee asks the Court to apply here.
See Parksv.FIA CardServs., N.A.(Inre Marshall),550F.3d1251(10thCir. 2008). Pursuantto
the dominion/control test, “a transfer of property will be of ‘an interest of the debtor in property’
if the debtorexercised dominionor control over the transferredproperty.” Id. at 1255.
Hebert, relying on the First Circuit’s focus in Palladino on the purpose behind fraudulent
transferlaws–toprotectcreditorsfromadebtor’sprepetitiontransactionsthatdepletethepoolof
assets later available to satisfy creditors’ claims – implores this Court to apply a “diminution of
estate” test. See Palladino, 942 F.3d at 58. Pursuant to the diminution of estate test, “a debtor’s

transferofpropertyconstitutesatransferof‘aninterestofthedebtorinproperty’ifitdeprivesthe
bankruptcy estate of resources which would otherwise have been used to satisfy the claims of
creditors.” Marshall,550F.3dat1256. AccordingtoHebert,thefundsborrowedandtransferred
directly from the credit card issuers to Hebert could not be reached or collected by any creditor
and would not have been available to pay creditors’ claims in this bankruptcy case. Therefore,
Hebert argues, there was no diminution of the Debtor’s estate and the payments to Hebert were
not fraudulent transfers. 
As discussed in Marshall, the majority view is that when a debtor transforms an offer of
credit into loan proceeds disbursed to pay another creditor at the debtor’s direction, the debtor
exercises control of the funds and deprives the bankruptcy estate of those funds despite never
havingpossessionthereof. Marshall,550F.3dat1256(citingMeoliv.MBNAAm.Bank,N.A.(In
re Wells), 382 B.R 355 (B.A.P. 6th Cir. 2008); Mukamal v. Bank of Am. (In re Egidi), 386 B.R.
884 (Bankr. S.D. Fla. 2008); Yoppolo v. Greenwood Trust (In re Spitler), 213 B.R. 995 (Bankr.
N.D. Ohio 1997)). In Marshall, the Tenth Circuit, deciding that the debtors had exercised

dominion or control over the funds at issue (funds borrowed from one credit card account to pay
the balance on another account), stated that the transaction was “essentially the same as if [the]
debtors had drawn on their [existing] line of credit, deposited the proceeds into an account within
their control, and then wrote a check,” holding that “[i]n both scenarios, debtors obtained an
interest in the loan proceeds even if the interest was only fleeting.” 550 F.3d at 1256-57. And,
even in applying the diminution of the estate test, the Marshall court held that the proceeds from
the line of credit “were an asset of the estate for at least an instant” before they were transferred
“(perhapsonlyananosecond)later.” Id.at1258andn.6. Whileacknowledgingthenetzeroeffect
ontheestateduetotheaccrualofadditionaldebt,theMarshallcourtequatedtheabilitytocontrol

disbursementoftheproceedstophysicalcontroloftheproceedsandfoundthatabalancetransfer
between credit cards constituted a transfer of “an interest of the debtor in property” that deprived
the estate ofthose funds. 
Hebert argues that the Tenth Circuit, in Walters v. Stevens, Littman, Biddison, Tharp &
Weinberg,LLC(InreWagenknecht),971F.3d1209(10thCir.2020),subsequentlydisavowedits
Marshall decision in favor of applying the diminution of estate test to determine whether
prepetition payment of the debtor’s legal fees by the debtor’s mother with the mother’s funds,
which the mother considered a loan to debtor, was a preferential transfer. Based on the mother’s
attestation that she agreed to make the loan to the debtor for the sole purpose of paying the legal
fees and would not have made the loan for any other purpose, the Court found that the debtor did
not exercise control or dominion over the proceeds since the debtor had no ability to direct their
distribution. Id. at 1214. Because the funds never passed to the debtor or through the debtor’s
account and the debtor had no role in delivering the funds to the recipient, the Court held that the
loanproceeds wouldnot have beenavailable tosatisfycreditors’ claimsand therefore“the policy

behindthe avoidance power is not implicated.” Id. (quotingBegier, 496U.S. at 58). Rather than
reject the dominion/control test, the Court in Wagenknecht first considered the debtor’s inability
to control distribution of the loan proceeds and seemingly applied both tests to determine an
interestofthedebtorinpropertywasnottransferredbythedebtor’smother’spayment. Idat1215.
ThefactsinthiscasearereadilydistinguishablefromWagenknechtsincenopartyhasallegedthat
the credit card issuers conditioned approval of the Debtors’ requested transactions on the identity
of theintended recipient. 
In some situations, § 541(a) incorporates “property in which the debtor did not have a
possessory interest.” United States v. Whiting Pools, Inc., 462 U.S. 198, 205 (1983). The First

Circuit has held that “[w]hen determining whether certain funds are considered ‘aninterest of the
debtor in property,’ the ability of the debtor to exercise control over the property can be
determinative.” Rileyv.Nat’lLumberCo.(InreReale),584F.3d27,31(1stCir.2009)(citations
omitted); see also Howison v. Milo Enters., Inc. (In re Freaky Bean Coffee Co.), 494 B.R. 771,
781-782 (1st Cir. 2013) (considering debtor’s lack of exercise of control to determine that debtor
did not have an interest in the funds at issue while noting that other courts have applied a
diminution of the estate test). “[T]he ability to exercise control over the property is sufficient to
establishownership.” Grayv.TravelersIns.Co.(InreNeponsetRiverPaperCo.),231B.R.829,
833 (B.A.P. 1st Cir. 1999) (citation omitted); see also Sigmon v. Royal Cake Co., Inc. (In re
Cybermech, Inc.), 13 F.3d 818, 820-821 (4th Cir. 1994) (dominion and control are sufficient to 
demonstrate an interest in property). The Debtors requested loan proceeds from their credit card 
issuers and directed that the proceeds be disbursed to Hebert. Hebert does not allege that the credit 
card issuers could have stopped a transaction or payment or could have redirected the loan 
proceeds. The Debtors’ exercise of control over the disbursement of the credit card proceeds 
created an interest of the Debtors in the proceeds that the Debtors transferred to Hebert. 
 This Court agrees with the majority view, as represented by the Marshall decision, that the 
Debtors’ ability to exercise control over the credit card convenience check proceeds by directing 
their disbursement is determinative in this case of whether an interest of the Debtors in property 
was transferred to Hebert. 

Ill. CONCLUSION 
 For the foregoing reasons, the Court rules that the Trustee, in the complaint, has stated a 
plausible claim that within 2 years prior to the Petition Date, the Debtors transferred an interest of 
the Debtors in property to Hebert. The veracity of the Trustee’s allegations, the value that the 
Debtors received in exchange for the payments to Hebert, and the Debtors’ financial circumstances 
as of the time of each transfer are factual issues reserved for another day. Accordingly, the Court 
will deny the Motion to Dismiss. A separate order in conformity with this Memorandum will 
issue forthwith. 
 By the Court 

Dated: September 30, 2022 Lhe kei . MS 
 Elizabeth D. Katz 
 United States Bankruptcy Judge